**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KREG THERAPEUTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 11-cv-6771 |
| v. ) | |
| ) | Judge Robert M. Dow, Jr. |
| VITALGO, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kreg Therapeutics, Inc. has sued Defendant VitalGo, Inc. seeking to enjoin VitalGo from breaching the parties' contract. In turn, VitalGo has counterclaimed, alleging claims for account stated and breach of contract, and seeking a declaratory judgment as to the parties' rights and obligations. Before the Court is Kreg's motion for a temporary restraining order and preliminary injunction [4].[1] Kreg asks the Court to enjoin VitalGo from refusing to recognize Kreg as its exclusive distributor of VitalGo's adjustable hospital bed, the Total Lift Bed™ ("Total Lift Bed"), in certain geographical territories through May 31, 2012. For the reasons set forth below, the Court respectfully denies Kreg's motion for a temporary retraining order [4].

**I.      Background**

   **A.         The Agreements**

Plaintiff Kreg is an Illinois corporation that provides specialty medical equipment to nursing homes and hospitals. Defendant VitalGo is a Delaware corporation that manufactures the Total Lift Bed, a hospital-grade bed that can take a patient from lying down to a fully standing position with no lifting by the caregiver. On December 23, 2009, Kreg and VitalGo

---

[1] Also before the Court is Kreg's related motion for leave to file a reply to correct Ohad Paz's third declaration [33, 34], which the Court grants.

entered into a written contract ("the agreement") for the sale by VitalGo and the purchase and distribution by Kreg of Total Lift Beds in Indiana, Illinois, Wisconsin, and greater Metropolitan Atlanta, Georgia ("the original territories"). The agreement granted Kreg "the exclusive and non-assignable right to sell, lease and rent" Total Lift Beds in the original territories until January 31, 2011 in consideration of Kreg's initial purchase of twenty beds.

The agreement contemplates a relationship lasting longer than just one year. To maintain its exclusivity beyond January 31, 2011, however, the agreement required Kreg to commit to future minimum purchases of Total Lift Beds. Paragraph 1(B) of the agreement states that both VitalGo and Kreg "agree that a yearly minimum purchase requirement will need to be established per Territory for [Kreg] to maintain its exclusivity in each Territory." (Amend. Compl., Ex. A.) Specifically, the agreement states that Kreg could renew its exclusive distribution rights for an additional twelve month period "by agreeing to commit to future minimum purchases in 2011 * * * prior to the completion of the current period." (*Id.*)

Paragraph 1(B) sets forth a formula by which the parties would calculate Kreg's minimum purchase requirements for each territory. The agreement sets the minimum purchase requirement at $200,000 of Total Lift Beds yearly per territory, but the yearly requirement could be "adjusted up or down by [VitalGo] based on the yearly purchases of other distributors in different territories" and would be "adjusted up or down pro rata based on the population of the geographic regions in" the original territories. (*Id.*) Although the agreement also states that VitalGo could lower the minimum purchase requirements or extend the period of time in which to complete the purchases, the agreement appears to permit such adjustments in VitalGo's discretion. Finally, the agreement provides that if Kreg does not meet the annual minimum

2

purchase requirement in any year, VitalGo's "sole remedy is to strip [Kreg] of its exclusivity in that Territory only." (*Id.*)

On April 6, 2010, Kreg and VitalGo entered into an amendment to the agreement ("the amendment"). The amendment adds Florida, Greater Metropolitan Philadelphia and South New Jersey area, and Greater Metropolitan St. Louis, Missouri ("the additional territories") to the list of exclusive territories in Exhibit B of the agreement. Paragraph 2 of the amendment states that Kreg "shall have exclusive distribution rights, as set forth in Paragraph 1 of the Agreement, for all Territories of amended Exhibit B until at least May 31, 2012." (Amend. Compl., Ex. B.) In return, Kreg agreed to an initial purchase of sixteen beds for the additional territories.

Paragraph 2 of the amendment goes on to state that Kreg could continue as exclusive distributor in the additional territories beyond May 31, 2012 if Kreg "meets the minimum purchase requirements set forth in the Agreement for any of the additional Territories." (*Id.*) Paragraph 6 of the amendment provides that "[p]rices, terms and yearly quotas for the additional Territories shall be the same as set forth in the Agreement, except that the dates for the computation of yearly minimums for the additional Territories * * * shall begin on June 30, 2010." (*Id.*) The amendment makes clear that all other terms and conditions in the agreement remained unchanged.

### B. The Parties' Performance Under the Agreement

Pursuant to the parties' contract, Kreg purchased a total of twenty Total Lift Beds for the original territories, and fifteen Total Lift Beds for the additional territories. Kreg modified the Total Lift Beds that it purchased from VitalGo and marketed them to intensive care units in hospitals. It worked to gain approval of the beds at hospitals in its territories by funding studies and trials, training intensive care unit staff and physicians, and assisting with the development of

3

protocols and treatment regimes. Specifically, Kreg entered into an agreement with at least one hospital to conduct a trial of the bed in its intensive care unit. That trial led to the hospital adopting a protocol for the use of the beds in its intensive cardiac care unit, which Kreg expects will increase demand for the Total Lift Bed. Kreg estimates that it has spent more than $250,000 promoting the Total Lift Bed.

### C. The Dispute

On June 2, 2011, VitalGo's President and CEO, Ohad Paz, sent a letter to Kreg's owner and President, Craig Poulos, in which he informed Mr. Poulos that the parties' agreement dated December 23, 2009 and amendment dated April 6, 2010 had expired and, accordingly, Kreg no longer had exclusive distribution rights in any of its territories. After Mr. Poulos told Mr. Paz that he believed that the parties' agreement remained in effect, Mr. Paz sent Mr. Poulos another letter, dated June 8, 2011, in which he stated that the agreement had expired because Kreg had not committed to minimum purchases prior to January 31, 2011. Mr. Paz further stated that his June 2, 2011 letter was not a letter of termination resulting from Kreg's breach of contract, but was instead "a formal notification" that Kreg was no longer an exclusive distributor of Total Lift Beds. VitalGo then entered into a national exclusive distributor agreement with RecoverCare LLC, a company that distributes wound care, bariatric, and safe patent-handling equipment to healthcare facilities. VitalGo's agreement with RecoverCare grants RecoverCare the exclusive right to distribute the Total Lift Bed through 2014, in exchange for RecoverCare's commitment to make minimum purchases.

On September 15, 2011, more than three months after it received Mr. Paz's letter stating that Kreg and VitalGo's agreement had expired, Kreg sent VitalGo a purchase order for five Total Lift Beds and some related parts. VitalGo refused to fill the purchase order for the beds,

but stated that VitalGo would continue to supply Kreg "with after sale support of spare parts" for the beds that it previously had purchased. (Amend. Compl., Ex. F.) A little over a week after VitalGo refused to fill Kreg's purchase order for the five beds, Kreg filed this lawsuit and moved for a temporary restraining order and preliminary injunction to enjoin VitalGo from breaching the parties' agreement.

In particular, Kreg asks the Court to enjoin VitalGo from refusing to recognize Kreg as its exclusive distributor for all of the territories listed in amended Exhibit B through May 31, 2012.[2] In response, VitalGo contends that it no longer has an obligation to fill any orders that Kreg submits. According to VitalGo, because Kreg did not honor its obligations to commit to minimum purchases in each of the territories, the agreement has expired. VitalGo also argues that because of its national exclusive distributor agreement with RecoverCare, VitalGo has no Total Lift Beds available for delivery until the beginning of 2012.

Since the filing of Kreg's complaint and motion, the parties have engaged in extensive, expedited briefing and supplemental briefing pursuant to agreed briefing schedules. After the parties negotiated the terms of a protective order, they tendered to the Court additional factual materials, much of which touches on Kreg's operations and inventory. In addition, the Court has held two hearings during which counsel have presented oral argument and addressed the Court's questions. Finally, in response to VitalGo's motion to dismiss, Kreg has filed a first amended verified complaint [17], which is now the operative pleading in this case.

**II. Analysis**

Like all forms of injunctive relief, a temporary restraining order is "an extraordinary remedy that should not be granted unless the movant, *by a clear showing*, carries the burden of

---

[2] It appears that during the pendency of this matter, Kreg has adopted an alternative position – namely, that VitalGo be ordered, at a minimum, to immediately fill Kreg's order for five additional beds.

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original). A party seeking a temporary restraining order must demonstrate as a threshold matter that (1) its case has some likelihood of succeeding on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if preliminary relief is denied. *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992). If the moving party meets this burden, then the court must consider the irreparable harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994). Finally, the court considers the public interest served by granting or denying the relief, including the effects of the relief on non-parties. *Id.*; see also *Credit Suisse First Boston, LLC v. Vender*, No. 04 C 7631, 2004 WL 2806191, at *1 (N.D. Ill. Dec. 3, 2004). The court then weighs all of these factors, "sitting as would a chancellor in equity," *Abbott*, 971 F.2d at 12, and applies a "sliding scale" approach, under which "the more likely plaintiff will succeed on the merits, the less the balance of irreparable harms need favor plaintiff's position." *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 895 (7th Cir. 2001).

      **A.**     **Likelihood of Success on the Merits**

A party seeking a TRO or a preliminary injunction must demonstrate "that it has a 'better than negligible' chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This is an "admittedly low requirement." *Id.* Kreg's claim for injunctive relief is based on its assertion that VitalGo breached the parties' contract. To succeed on a breach of contract claim under New York law, which the parties agree applies in this case, a plaintiff must establish: (1) formation of a contract between the plaintiff and the defendant; (2) performance by the plaintiff; (3) the

6

defendant's failure to perform; and (4) resulting damages. *Clearmont Prop., LLC v. Eisner*, 58 A.D.3d 1052, 1055 (N.Y. App. Div. 2009). At issue here is whether Kreg performed under the parties' agreement; specifically, whether Kreg complied with the provisions in the agreement that required it to commit to future minimum purchases of the Total Lift Bed.[3]

The parties agree that the agreement allows for an extension of Kreg's exclusive distribution rights beyond the original term, but only if Kreg committed to certain minimum purchases of Total Lift Beds. They also agree that, before they signed the amendment, the date by which Kreg was required to commit to future purchases of beds was January 31, 2011. The parties' dispute arises from how the amendment affected the January 31, 2011 deadline for committing to future minimum purchases in the original territories. If, as VitalGo argues, the deadline for the original territories remained January 31, 2011, and Kreg had not committed by that date to certain future minimum purchases for those territories,[4] Kreg lost its exclusive distributorship rights to all the territories because the agreement expired. If, however, the amendment moved the deadline for committing to future minimum purchases for the original territories from January 31, 2011, to May 31, 2012, as Kreg argues, the contract is still in effect and VitalGo's failure to fill Kreg's purchase order is a breach of the parties' agreement.

---

[3] VitalGo argues that Kreg has failed to perform under the parties' agreements in two additional ways: (1) Kreg has purchased only fifteen of the sixteen beds required under the amendment, and (2) Kreg has failed to pay VitalGo $4,963.70 for equipment that Kreg ordered and that VitalGo sold and shipped. The Court agrees with Kreg, however, that minimum purchases aside, it has a strong likelihood of success on the argument that it has substantially performed under the parties' agreements as to those two issues. See *Desmond-Dunne Co. v. Friedman-Doscher Co.*, 162 N.Y. 486, 490 (1900); see also *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007) ("Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain * * *.").

[4] Kreg argues that it has committed to buying either 1) the same number of beds in the year following May 31, 2012 that it bought in the last two years; or 2) the same number of beds sold by any other distributor on a territory-adjusted basis. Even accepting Kreg's version of events, however, Kreg's minimum purchase commitments fall far short of those specified in the parties' agreement and the amendment thereto.

Kreg's position has at least some support in the text of the amendment. See *Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1139 (7th Cir. 1994) (concluding that the plaintiff had some likelihood of success on the merits where the plaintiff's position was "a plausible interpretation of the contract"); *NEG Micon USA v. N. Alt. Engergy*, No. 03 C 5851, 2003 WL 22110903, at *2 (N.D. Ill. Sept. 11, 2003) (although the plaintiff failed to establish that it had a strong likelihood of success on the merits, the court could not find that the plaintiff had "not met the minimal burden of establishing a less than negligible likelihood of success"). Paragraph 2 of the amendment states that Kreg "shall have exclusive distribution rights, as set forth in Paragraph 1 of the Agreement, for all Territories of amended Exhibit B until at least May 31, 2012." (Amend. Compl., Ex. B.) While it is premature to opine on a likely victor in this case, Kreg has demonstrated that it has a "better than negligible" likelihood of success on the merits. At the same time, because Kreg's case on the merits does not appear to be overwhelming, it will be required to make a clear showing that some or all of the other factors also favor its position to be entitled to temporary injunctive relief under the sliding scale approach. See *Ty, Inc.*, 237 F.3d at 895.

**B.     Irreparable Harm/Absence of Adequate Remedy at Law**

Beyond demonstrating some likelihood of success on the merits, Kreg must also show that it will suffer irreparable harm if the Court does not grant preliminary relief and that Kreg has no adequate remedy at law. These two requirements – irreparable harm and no adequate remedy at law – tend to merge. See *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). "The question is then whether the plaintiff will be made whole if he prevails on the merits and is awarded damages." *Id.* An injury is "irreparable" when it is of such a nature that the injured party cannot be adequately compensated in damages or when damages cannot be

measured by any pecuniary standard. *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997).

In addition to lost profits, Kreg argues that VitalGo's breach of the parties' agreement will result in irreparable harm in the form of damage to its reputation in the health care industry. Specifically, Kreg contends that its reputation will suffer if it is not able to supply beds to its existing customers. Damage to a party's reputation or good will "can constitute irreparable harm that is not compensable by an award of money damages," even in a breach of contract case. *Gateway E. Ry. Co.*, 35 F.3d at 1140; *Reinders Bros., Inc. v. Rain Bird E. Sales Corp.*, 627 F.2d 44, 53 (7th Cir. 1980) (affirming the district court's conclusion that the termination of the parties' contract "may irreparably damage [the plaintiff's] good will"). However, irreparable harm is not presumed in this type of case; the Seventh Circuit requires "a persuasive showing of irreparable harm." *Chicago United Indus., Ltd. v. City of Chicago*, 445 F.3d 940, 945 (7th 2006).

Kreg has not made that showing at this time. In support of its argument that it will suffer irreparable harm to its reputation without injunctive relief, Kreg submitted several affidavits from Mr. Poulos. Mr. Poulos states that Kreg supplies hospitals with Total Lift Beds on an as-needed basis. Kreg rents the beds to its hospital customers; it does not sell them. According to Mr. Poulos, Kreg currently owns forty-five Total Lift Beds, thirty-five of which are serviceable and ten of which are either broken or are being used for their parts. According to Mr. Poulos, the thirty-five serviceable beds in Kreg's inventory are distributed as follows: ten in Chicago; six in Baltimore; five in Miami; four each in Atlanta, Indianapolis, and Philadelphia; and two in Bloomington, Illinois. Based on Kreg's history of rentals and its current level of inventory, Kreg ordered another five Total Lift Beds from VitalGo. Kreg believes those five beds are necessary

9

to allow it to meet the anticipated needs of its current hospital customers. In other words, without these five additional beds, Kreg argues, it "faces the very real danger of having to reject a doctor's order for a Total Lift Bed." [18 at 11.] Kreg now claims that it needs eight additional beds to reach its "coverage ratio" goal of 1.5 beds per territory. [30 at 13.]

The Court accepts that Kreg's reputation could be irreparably harmed in the medical field if, after developing the market for the Total Lift Bed, Kreg suddenly had to reject orders for the bed from doctors who were about to go into surgery. See *Reinders Bros., Inc.*, 627 F.2d at 53 (concluding that the interruption of the plaintiff's direct supply of goods would interfere with its "efficient servicing of a valuable segment of its clientele," and irreparably damage its good will); see also, *e.g.*, *Rex Med. L.P. v. Angiotech Pharms.*, 754 F. Supp. 2d 616, 621-22 (S.D.N.Y 2010) ("Typically, cases where courts have found irreparable harm from a loss of goodwill or business relationships have involved situations where the dispute between the parties leaves one party unable to provide its product to its customers."). But with thirty-five serviceable beds in its inventory and another ten that may well be fixable,[5] the Court cannot conclude on this record that harm to Kreg's reputation is anything more than a "mere possibility." *U.S. Army Corps of Eng'rs*, --- F.3d ---, No. 10-3891, 2011 WL 3836457, at *22 (7th Cir. Aug. 24, 2011). Kreg has not demonstrated that VitalGo's actions to date, coupled with Kreg's current business needs, are likely to result in the interruption of Kreg's ability to provide Total Lift Beds to its customers. See *Gateway E. Ry. Co.*, 35 F.3d at 1140. At this point, any harm to Kreg's reputation is too speculative to warrant the "extraordinary remedy" of a TRO.

Moreover, before granting preliminary relief, the Court must be convinced that irreparable harm to the plaintiff is likely, not just possible. *U.S. Army Corps of Eng'rs*, 2011 WL

---

[5] VitalGo has stated that it will continue to supply Kreg with parts for the Total Lift Beds that it has already purchased – as VitalGo is required to do under the agreement. (Amend. Compl., Ex. A, ¶ 20.)

3836457, at *22. Under the current state of the record, the Court cannot conclude that Kreg's loss of reputation is "[a] presently existing actual threat * * *." *Id.* (quoting 11A Charles Alan Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2948.1, at 154-55 (2d ed. 1995)). Accordingly, the Court concludes that Kreg has failed to show (1) that it will suffer irreparable harm without preliminary relief and (2) that it has no adequate remedy at law. In so concluding, the Court recognizes that the situation facing Kreg is fluid and could change rapidly depending on, among other things, market conditions. Nothing in this ruling forecloses reconsideration of whether temporary injunctive relief is appropriate prior to the Court's ultimate disposition of this case on the merits should changed circumstances warrant.

Because Kreg has not met the threshold requirements for a temporary restraining order, the Court need not reach the balancing of the harms or the public interest. See *East St. Louis Laborers' Local 100 v. Bellon Wrecking & Salvage Co.*, 414 F.3d 700, 703 (7th Cir. 2005) (if the moving party cannot demonstrate that it has no adequate remedy at law and that it will suffer irreparable harm if preliminary relief is denied, "a court's inquiry is over and the injunction must be denied"); *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998) (same). However, in the interest of completeness, the Court will briefly address the other factors as well.

In regard to the balance of harms, the Court cannot conclude that either party faces substantial harm at this time, although the risks of harm may be significant on both sides under certain hypothetical scenarios. As noted above, if Kreg receives additional orders that further tax its existing inventory and if Kreg cannot enhance its inventory by repairing the beds it already has, it may incur harm to its reputation if it cannot deliver a requested bed. Similarly, if VitalGo were ordered to provide beds to Kreg that its new distributor, RecoverCare, has a contractual right to purchase, then VitalGo could face harm to its reputation and possible litigation as well.

If these contingencies came to pass, the balance might well favor Kreg because VitalGo's decision to enter into a contract with a new distributor while a dispute with its prior distributor remained unresolved was a self-inflicted risk. But at this time, the balance of harms does not tilt strongly in either direction.

The fact that high end hospital beds are at issue makes this case of greater interest to the public than an ordinary contract dispute. Both parties, in fact, seem to have a concern that at some point the demand for the beds may exceed the supply. At this time, however, that scenario does not appear to have unfolded. Accordingly, the public interest would best be served by an expeditious resolution of this case on the merits – which essentially involves the construction of the parties' agreement and the amendment thereto – so that the parties (and RecoverCare) can govern their business affairs accordingly and make whatever arrangements necessary to serve their customers and the end user patients who need the beds.

## III. Conclusion

For the foregoing reasons, the Court denies Kreg's motion for a temporary restraining order [4] and grants Kreg's motion for leave to file a reply to correct Ohad Paz's third declaration [33, 34]. As the parties have not agreed to a ruling on Kreg's motion for preliminary injunction on the documents submitted, the Court sets a status hearing on November 10, 2011, at 10:00 a.m. to discuss with the parties how best to proceed in this case.

Dated: November 3, 2011 _____

Robert M. Dow, Jr.
United States District Judge