# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KREG THERAPEUTICS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| VITALGO, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | Case No. 11-cv-6771 |
| ) | |
| VITALGO, INC., ) | Judge Robert M. Dow, Jr. |
| ) | |
| ) | |
| Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| KREG THERAPEUTICS, INC., ) | |
| ) | |
| Counter-Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a second motion [95] by Plaintiff/Counter-Defendant Kreg Therapeutics, Inc. ("Kreg") for summary judgment on its claim against Defendant/Counter-Plaintiff VitalGo, Inc. ("VitalGo"). For the reasons stated below, the Court reaffirms its earlier determination that Kreg has established three of the four elements of its claim, see [93] at 31, but denies the currently pending motion [95] because material issues of fact remain as to the damages to which Kreg may be entitled. This matter is set for status on April 15, 2014 at 9:00 a.m.

## I. Background

### A. Procedural History

In December 2009, Kreg and VitalGo entered into an agreement pursuant to which Kreg was granted the exclusive right to distribute VitalGo's adjustable hospital bed, the Total Lift Bed, in certain regions of the country. In exchange for this exclusivity, Kreg agreed to commit to purchase minimum quantities of the bed. From the get-go, the parties have disputed whether Kreg upheld its end of the parties' agreement by properly committing to purchase the requisite quantity of beds. See [47] at 7 & nn. 3-4. Kreg maintains that it did, and, in compliance with Local Rule 56.1 and Federal Rule of Civil Procedure 56(c), provided the Court with evidence of that fact in connection with its original motion for summary judgment. VitalGo consistently has taken the opposite position. See, *e.g.*, [47] at 5; [81] at 2-3; [112] at 6-7. Unfortunately for VitalGo, however, its counsel neglected to properly file the materials required by Local Rule 56.1 at the first summary judgment stage. See [93] at 2-4. Although it was in no way obligated to do so, the Court twice attempted to contact VitalGo's counsel to alert him to the omission. See *id.* at 3-4. VitalGo nonetheless failed to rectify the error. The Court accordingly conducted its summary judgment analysis with the almost exclusive benefit of Kreg's properly submitted and filed facts and argument.

Perhaps not surprisingly on the lopsided record before it, the Court concluded that "as to the original territories [enumerated in the parties' contract], Kreg has established the first three elements of a claim for breach of contract under New York law: (1) the existence of a contract, (2) Kreg's own performance, and (3) VitalGo's breach." [93] at 31. Because Kreg failed to prove damages or demonstrate an entitlement to injunctive relief, however, the Court denied its motion for summary judgment. See *id.* at 33. In light of the changing conditions of the case, the

Court left open for Kreg the opportunity to develop the record further and attempt to demonstrate an entitlement to damages. See *id*. at 31; see also Fed. R. Civ. P. 54(c).

At the time that the Court issued its ruling, it scheduled a status hearing for April 18, 2013. See [93] at 2. VitalGo's counsel failed to appear on that date.[1] See [94]. At the hearing, the Court had the following exchange with Kreg's counsel (one of whom traveled from Kansas City to attend the hearing):

> Counsel: Well, your Honor, my thought is that the current opinion is really a 56(g). I mean, you found there was a contract, you found we performed, you found they breached but you didn't find damages.
> What if we consider with a 56(g) ruling the only thing left is damages. We could file a motion for summary judgment as to damages. If they don't respond –
>
> The Court: Yes.
>
> Counsel: -- you will rule however you rule.
>
> The Court: We know that drill. Yes, [my law clerk] and I have had a few one-sided summary judgments too. It's hard to clap with one hand, but you can do it.
>
> Counsel: You can do it.
>
> The Court: So if that's the way you want to proceed and you think that's the most sensible, I'm happy to entertain the motion.
>
> Counsel: I'm happy to come back again in 30 days, but I'm just afraid it will be the same participants at the same party.
>
> The Court: Right, and I guess the other thing we could do, I suppose, is you can give me a target date for when you think you can get the motion ready and you can just file it.
>
> Counsel: Your Honor, I think we can do that within 60 days.
>
> The Court: Okay, that's fine. I don't want to lose you.

---

[1] Counsel later indicated that he "wasn't able to make it" to the April 18, 2013 status hearing "because of the weather that day." Tr. 1, June 19, 2013. Ordinarily when circumstances (weather-related or otherwise) prevent counsel from appearing at a status or motion hearing, counsel alert the Court to the problem, either before or shortly thereafter if the exigencies prevented advance notice. Counsel who miss a court appearance also generally inquire of the Courtroom Deputy and/or opposing counsel to ascertain what transpired in counsel's absence, and if necessary obtain a transcript of the proceedings.

> Counsel: I agree. I don't want to be lost.
>
> The Court: I'll put you guys in for 60 days. If you file the motion ahead of time, I'll probably just set a briefing schedule on it, and again, that's another opportunity for them to surface.
>
> Counsel: Exactly. That's my thought.
>
> * * *
>
> The Court: Let's call it a deal then. 60 days would be?
>
> The Clerk: June 19th, 9 a.m.
>
> The Court: June 19th, and if you file your summary judgment motion before that and maybe even notice it up for that day or before that, the likelihood is I'll set a briefing schedule.

Tr. 3-4, April 18, 2013. At this hearing, the Court made explicit what it plainly intended but neglected to say in so many words in its 33-page summary judgment opinion: that the findings it made in resolving the summary judgment motions were "established in the case" pursuant to Federal Rule of Civil Procedure 56(g).

In accordance with its representations at the hearing, Kreg filed the instant motion for summary judgment [95] on June 18, 2013. The Court held the scheduled status hearing on June 19, 2013. See [98]. Counsel for VitalGo appeared at the hearing. He noted that the new summary judgment motion was accompanied by documents, including an expert opinion, that had not previously been produced in discovery. He represented that he would need time to review the new materials and possibly seek additional discovery before responding. See Tr. 2-3, June 19, 2013. The Court acknowledged that there could be valid Rule 56(d) concerns, and suggested that the parties confer and attempt to devise a solution to address them. *Id.* at 2. The Court asked the parties to prepare a joint status report outlining their proposed approach to additional discovery and briefing of the renewed summary judgment motion. *Id.* at 3.

Before the joint report was due, VitalGo sought leave to substitute its counsel. See [99]. The Court granted the motion. See [102]; [105]; [106]. A few weeks after new counsel appeared in the case, Kreg and VitalGo submitted their joint report proposing a schedule for conducting discovery on the issue of damages and briefing Kreg's renewed motion. See [109]. In a footnote, VitalGo lodged an objection to the summary judgment motion "because, among other things, Kreg's Amended Complaint does not seek damages nor purport to state a breach of contract claim for damages." [109] n.1. VitalGo did not elaborate as to any other bases for its objection, and the parties proposed a discovery schedule centered on the issue of damages. See [109]. The Court entered an order adopting the parties' proposed schedule. [110]. Neither party sought reconsideration or further clarification of the Court's summary judgment ruling [93], or otherwise indicated that the parties were on anything other than the same page about the trajectory of the case. And the Court previously had addressed, see [93] at 29-31, the case law permitting an award of damages in certain circumstances even if not requested in the complaint.

In its response to Kreg's renewed motion for summary judgment, which substantively addresses only the issue of damages, VitalGo asserts for the first time that "the Court did not enter an order, or otherwise state," that the facts in the summary judgment opinion "are established in the case going forward." [112] at 4. VitalGo suggests that because the Court neglected to specifically reference Rule 56(g) in its opinion and "did not undertake any extensive <u>factual</u> analysis regarding breach," the issue of whether Kreg adequately performed the agreement is back on the table and properly disputed at this juncture. See [112] at 4-7. VitalGo candidly acknowledges that the primary reason that the Court did not find any disputed questions of fact was that "prior defense counsel failed to file its response papers," and that "[t]hrough prior counsel's error, this evidence was not properly presented in response to the First Motion."

[112] at 5-6. VitalGo also suggests, again, for the first time, that "if the Court intended its Order to operate as a Rule 56(g) finding, then the Court should modify that Order which is, after all, interlocutory." [112] at 5.

The Court respectfully declines to revisit the issue of Kreg's performance at this stage of the case. Although it is true that the Court did not specifically invoke Rule 56(g) in its order, it was clear from the Court's decision that it was not, as VitalGo now suggests, "accept[ing] Kreg's facts as true [solely] for purposes of ruling on the First Motion." [112] at 5. The Court explicitly concluded that "as to the original territories [enumerated in the parties' contract], Kreg has established the first three elements of a claim for breach of contract under New York law: (1) the existence of a contract, (2) Kreg's own performance, and (3) VitalGo's breach," and emphasized that the sole reason Kreg was not entitled to summary judgment was its failure to establish damages. [93] at 31. The Court further stated that "the denial of Kreg's motion is subject to the discussion above concerning potential alternative relief if, upon further consideration, the circumstances of the case so warrant." *Id.* Furthermore, the Court clarified at the April 18, 2013 hearing – which VitalGo neglected to attend – that damages were all that remained to be decided on Kreg's claim. Finally, VitalGo, represented by new counsel, at least implicitly appeared to accept this approach in the joint status report [109].

It is of no moment that these conclusions were predicated on the shortcomings of prior counsel's filings or lack thereof; VitalGo is bound by the actions of its counsel and is not entitled to a redo. "The rule is that *all* of the attorney's misconduct (except in the cases where the act is outside the scope of employment or in cases of excusable neglect) becomes the problem of the client." *Bakery Mach. & Fabrication, Inc. v. Traditional Baking, Inc.*, 570 F.3d 845, 848 (7th Cir. 2009); see also *Longs v. City of South Bend*, 201 F. App'x 361, 364-65 (7th Cir. 2006)

(explaining that "clients are accountable for the acts and omissions of their attorneys" and that "when an attorney neglects to file a timely brief, a district court acts within its discretion to deny Rule 60(b) relief even when the result is an adverse summary judgment ruling"). To be sure, VitalGo itself is not blameless in its litigation shortcomings, for clients "must 'vigilantly oversee,' and ultimately bear responsibility for, their attorneys' actions or failures," *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003) – a principle that applies even to incarcerated clients (as in *Modrowski*) and even more justifiably so to corporate clients like VitalGo. Nor is VitalGo necessarily without a remedy if counsel's neglect ultimately inflicts an otherwise avoidable hit on VitalGo's bottom line. See *Arteaga v. United States*, 711 F.3d 828, 834 (7th Cir. 2013) ("That an attorney's conduct of the suit is inadequate may be grounds for a malpractice action against the attorney, but it is certainly no basis for requiring the [other party] to pay the price of opposing counsel's dereliction." (quotation omitted)). This outcome may seem harsh, but the consequences of allowing litigants to rewrite the history of a case because of dissatisfaction with their counsel's performance would impose great burdens upon their opponents and the Court. See, *e.g.*, *Schaaf v. Midwest Transfer & Logistics, LLC*, 2010 WL 2722819, at *3 (N.D. Ill. July 8, 2010) ("Parties who receive an adverse ruling are not entitled to a mulligan, as the rules do not contemplate multiple rounds of motions relitigating the same subject on different grounds.").

Rule 56(g) provides that "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." As both parties recognize, one of the primary purposes of the rule is "to salvage some results from the judicial effort involved in evaluating, but ultimately denying, a summary judgment motion." *Patrick Schaumburg Autos., Inc. v. Hanover Ins. Co.*, 452 F. Supp. 2d 857, 867 (N.D. Ill. 2006);

[96] at 3; [112] at 5.  The Court devoted considerable judicial resources to evaluating the case and preparing its 33-page summary judgment opinion and order, and the Court is not inclined to revisit its analysis simply to allow VitalGo's evidently more prepared counsel to have a second bite at the apple.  In hindsight, the Court should have referenced Rule 56(g) in its opinion and order.  See [93].  However, it is plain from the Court's opinion, the discussion at the April 18, 2013 hearing, and the parties' subsequent conduct, see *Latin Am. Music Co., Inc. v. Media Power Grp., Inc.*, 705 F.3d 34, 39-41 (1st Cir. 2013), that everyone understood the case to moving forward on the issue of damages, not moving back to retread the issues of performance and breach.  Moreover, it would be inequitable to Kreg – which complied with the Court's procedural rules at the first summary judgment stage – to permit VitalGo to belatedly inject a dispute of material fact into the matter.  Accordingly, the Court will begin its substantive analysis where it left off: with the issue of damages.

### B. Local Rule 56.1

As the parties to this case are aware, Local Rule 56.1 requires a party moving for summary judgment to file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." N.D. Ill. L. R. 56.1(a)(3). The statement "shall consist of short numbered paragraphs" that refer to "materials relied upon to support the facts set forth." N.D. Ill. L. R. 56.1(a). The party opposing summary judgment is then required to file "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L. R. 56.1(b)(3)(B).

"The obligation set forth in Local Rule 56.1 is not a mere formality. Rather, [i]t follows from the obligation imposed by Fed. R. Civ. P. 56(e) on the party opposing summary judgment to identify specific facts that establish a genuine issue for trial." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 398 (7th Cir. 2012) (quotation omitted). "Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts," the Seventh Circuit has "consistently upheld the district court's discretion to require strict compliance with those rules." *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005); see also *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994) (collecting cases). The Court has in this case taken a strict approach to the local rules, see [93] at 2-4, and will continue doing so at this second summary judgment stage. Accordingly, the Court relies only on material statements of fact which are both admissible and supported by specific citations to the record compiled at this summary judgment phase. See Fed. R. Civ. P. 56(e); N.D. Ill. L.R. 56.1; see also *Davis v. Elec. Ins. Trs.*, 519 F.Supp.2d 834, 836 (N.D. Ill. 2007); *Lawrence v. Bd. of Election Com'rs of City of Chi.*, 524 F.Supp.2d 1011, 1014 (N.D. Ill. 2007). Denials (or statements that a fact is controverted) "must include a specific reference to the affidavit or other part of the record that supports such a denial. Citations to an entire transcript of a deposition or to a lengthy exhibit are not specific and are, accordingly, inappropriate." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 818-19 (7th Cir. 2004).

C.     **Facts[2]**

Kreg is an Illinois corporation that provides specialty medical equipment to hospitals and nursing homes. [97] ¶ 1; [119] ¶ 1. VitalGo is a Delaware corporation that produces the Total

---

[2] The parties' Rule 56.1 statements and briefs have been filed under seal. Accordingly, to the extent possible, the Court limits its discussion of information that the parties have treated as sensitive; a detailed discussion of those matters is not necessary to the disposition of the present motion.

Lift Bed, a hospital-grade bed that can elevate someone from a lying to a fully standing position, with zero lifting on the part of the caregiver. [97] ¶ 2; [119] ¶ 2. On or about December 23, 2009, Kreg and VitalGo entered into an agreement ("the Agreement"), pursuant to which VitalGo granted Kreg the exclusive right to distribute the Total Lift Bed in Illinois, Indiana, Wisconsin, and greater metropolitan Atlanta, Georgia ("the Original Territories") through January 31, 2011. [97] ¶ 3; [119] ¶ 3. The Agreement, which was governed by New York law, [97] ¶ 6; [119] ¶ 6, obligated Kreg to purchase 17, [119] ¶ 4, or 20, [97] ¶ 4, Total Lift Beds from VitalGo. The Agreement provided that for Kreg to renew its exclusive distributorship in the Original Territories for an additional year, Kreg was required to commit to purchase a minimum of $200,000.00 worth of "Equipment yearly per Territory." [97] ¶ 5; [119] ¶ 5. On April 6, 2010, the parties amended the Agreement to extend Kreg's exclusive distribution period from January 31, 2011 to May 31, 2011, and to give Kreg exclusive distribution rights in certain "Additional Territories" through June 30, 2011. [97] ¶¶ 7-9; [119] ¶¶ 7-9. In exchange for exclusive distribution rights in the Additional Territories and the extension of its exclusivity in the Original Territories, Kreg was required to purchase an additional 16 Total Lift Beds from VitalGo. [97] ¶ 10; [119] ¶ 10.

As previously determined, Kreg upheld its end of the bargain as to the Original Territories by orally committing to purchase the requisite quantity of Total Lift Beds for each of the four territories. See [93] at 7-8; [97] ¶¶ 12, 15. The parties agree that if Kreg made the commitments necessary to extend its exclusivity in the Original Territories, Kreg would have two principal rights as of June 1, 2011: (1) the right to exclusivity in the Original Territories until May 31, 2012; and (2) the right to purchase more Total Lift Beds from VitalGo at a price of $8,500 per bed until May 31, 2012. [118] ¶ 12; [129] ¶ 12. Notwithstanding Kreg's

performance, on June 2, 2011, VitalGo principal Ohad Paz sent an e-mail and letter to Kreg principal Craig Poulos terminating the parties' agreements. [97] ¶ 16; [119] ¶ 16. In this e-mail and letter, Paz directed Kreg to "immediately refrain from any further representation in regard to your status as our exclusive distributor in any of the territories." [97] ¶ 17; [119] ¶ 17. Paz also sent another e-mail stating that Kreg "will not get any more beds from us." [97] ¶ 18; [119] ¶ 18. On June 15, 2011, VitalGo and another medical product distributor, RecoverCare, issued a press release announcing a "partnership to launch the Total Lift Bed" and providing that the Total Lift Bed "will now be distributed nationwide exclusively through RecoverCare's network of 158 service centers." [97] ¶ 19; [119] ¶ 19.

On September 15, 2011, Kreg sent VitalGo a purchase order for five Total Lift Beds. [97] ¶ 20; [119] ¶ 20. On September 19, 2011, VitalGo refused to honor the purchase order, stating that Kreg was no longer an authorized distributor of the Total Lift Bed. [97] ¶ 21; [119] ¶ 21. The Court previously concluded that VitalGo breached the Agreement by failing to provide Kreg with the five beds it ordered. [93] at 27-28; [97] ¶ 23. The parties seem to agree that the termination of Kreg's exclusivity also would constitute a breach; each asked its expert to "opine on the value of the Agreement as of June 2, 2011." [118] Ex. J ¶ 18 (VitalGo); [97-4] at 4 (Kreg); see also [96] at 9 & n.1.

The parties agree that Kreg purchased 35 Total Lift Beds from VitalGo at a total cost of $266,400, [97] ¶ 25; [119] ¶ 25, or a cost per bed of $7,500 to $8,500. [118] ¶ 39; [129] ¶ 39. They dispute, however, how many beds Kreg owned as of June 2, 2011. VitalGo contends that Kreg had 49 beds, [119] ¶ 26, and Kreg contends that it had only 35. [97] ¶ 26. For the purposes of the instant motion, VitalGo does not dispute that 17 of Kreg's beds were being rented to Kreg's customers in the Original Territories. See [119] ¶ 27. The parties agree as to the useful

life of the Total Lift Bed, see [97] ¶ 28; [119] ¶ 28, and the average age of Kreg's inventory of beds as of June 2, 2011. [97] ¶ 29; [119] ¶ 29.

The parties agree on little else. They have obtained dueling experts, each of whom takes a very different view of the case. Kreg's expert, William J. Bradshaw, places the fair market value of the Original Territories at approximately $1.7 million and the Agreement as a whole at approximately $2.9 million.[3] See [97] ¶ 40; [97-4] at 4. VitalGo's expert, James M. Godbout, opines that the fair market value of Kreg's rights under the Agreement as of June 2, 2011 is orders of magnitude less: $4,000. [119] ¶ 13; [130] ¶ 13. Underlying these wildly divergent conclusions are disputes about, among other things, the number of Total Lift Beds that Kreg owned, the revenue that Kreg realized for renting each bed, the size of Kreg's profit margin, Kreg's weighted average cost of capital, the appropriate discount rate, and the accuracy of Kreg's revenue projections. See [97] ¶¶ 26, 30, 32-47; [119] ¶¶ 26, 30, 32-47.

Although each side alludes to potential infirmities with the experience, qualifications, methodology, or reliability of the other's expert, see [112] at 8-12; [127] at 14-15, their arguments on these points are underdeveloped. Neither has moved to exclude or strike the other's expert testimony as inadmissible under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Without the benefit of briefing on these complex issues, the Court does not draw any conclusions as to the ultimate admissibility of the expert reports – the only evidence the parties have submitted as to the crucial issue of the Agreement's fair market value. For purposes of the instant motion, the Court assumes that each side's expert testimony is admissible; there will be ample time at later stages of the case to sort out the specific grounds for and objections to the admissibility of the expert reports.

---

[3] In its previous opinion, the Court concluded that Kreg had performed only as to the Original Territories.

## II. Summary Judgment Standard

Summary judgment is appropriate if, construing all facts and drawing all inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Jajeh v. Cnty. of Cook*, 678 F.3d 560, 566 (7th Cir. 2012); see also *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the party moving for summary judgment demonstrates the absence of a disputed issue of material fact, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A genuine issue of material fact exists only if there is evidence to permit a jury to return a verdict for the nonmoving party. *Carroll*, 698 F.3d at 564 (7th Cir. 2012). This Court neither judges the credibility of witnesses nor evaluates the weight of the evidence when addressing a summary judgment motion, see *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir.2009); however, Rule 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## III. Analysis

Under New York law, damages for breach of contract are intended to compensate for foreseeable injury caused by the breach. *Freund v. Washington Sq. Press, Inc.*, 314 N.E.2d 419, 420 (N.Y. 1974). "Money damages are substitutional relief designed in theory 'to put the injured party in as good a position as he would have been put by full performance of the contract, at the least cost to the defendant and without charging him with the harms that he had no sufficient reason to foresee when he made the contract." *Id*. Here, neither party has directed the Court to

a provision of the Agreement or Amendment governing damages. "Where the contract is silent on the subject, the court must take a 'common sense' approach, and determine what the parties intended by considering 'the nature, purpose and particular circumstances of the contract known by the parties * * * as well as what liability the defendant fairly may be supposed to have assumed consciously.'" *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000) (quoting *Kenford Co. v. Cnty. of Erie*, 537 N.E.2d 176, 179 (N.Y. 1989)).

Plaintiffs may seek two types of damages: (1) "general" or "market" damages, and (2) "special" or "consequential" damages. *Schonfeld*, 218 F.3d at 175. General damages are "the value of the very performance promised." *Id.* (quotation omitted). They are typically measured as the difference between the contract price and the market value of the goods at the time of the breach. *Id.* at 175-76. Special or consequential damages seek to compensate the non-breaching party for additional losses that are incurred as a result of the breach. *Id.* at 176; see also *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 74 (2d Cir. 2010) ("Consequential damages, by contrast, are those that result when the non-breaching party's ability to profit from related transactions is hindered by the breach."). "When the defendant's conduct results in the loss of an income-producing asset with an ascertainable market value, the most accurate and immediate measure of damages is the market value of the asset at the time of breach—not the lost profits that the asset could have produced in the future." *Schonfeld*, 218 F.3d at 176. The parties agree that Kreg is proceeding under this so-called "lost asset" theory of damages. See, *e.g.*, [96] at 15 ("Kreg is not seeking lost profits, but instead is seeking the market value of the Agreement at the time of VitalGo's breach."); [112] at 7; [127] at 7. To prevail on this theory, Kreg must show that "liability for the loss of the asset was within the contemplation of the parties at the time the contract was made," and prove the asset's value "with reasonable certainty." *Schonfeld*, 218

F.3d at 177. Because "the market value of an income-producing asset is inherently less speculative than lost profits, * * * it is appropriate to apply these proof requirements more leniently than is the case with proof of lost profits." *Id.*

The Court need not resolve the question of whether the damages alleged by Kreg were within the contemplation of the parties. Even if they were, it is readily apparent that there is a material dispute as to the certainty with which Kreg can prove the fair market value of the lost asset. See *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 ("Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate."). "When a defendant's breach of contract deprives a plaintiff of an asset, the courts look to compensate the plaintiff for the 'market value' of the asset 'in contradistinction to any peculiar value the object in question may have had to the owner.'" *Schonfeld*, 218 F.3d at 178 (quoting John D. Calamari and Joseph M. Perillo, *The Law of Contracts* § 14–12 (3d ed. 1987)). "The fair market value is the price at which the property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of relevant facts." *Id.*; see also *Keator v. State of New York*, 244 N.E.2d 248, 249 (N.Y. 1968). For assets that lack a readily ascertainable market, like the Agreement here, "the determination of market value involves something of a fiction." *Id.* at 178 (quotation omitted). Nonetheless, evidence such as expert opinions, evidence of sales of comparable assets, or testimony of the asset's owner may be used to establish fair market value. See *id.* at 178-79.

Here, both parties rely almost exclusively on expert testimony to establish the fair market value of the Agreement. The fact that VitalGo's expert did not refer to his conclusion as "Kreg's damages," see [127] at 12, is of little moment; the measure of those damages, as Kreg

recognizes, is the fair market value of the asset. Likewise, that Kreg finds Godbout's valuation "laughable," [127] at 14, and "preposterous," [127] at 11, does not render it "too weak to get the case past summary judgment." [127] at 13 (quoting *Apple, Inc. v. Motorola, Inc.*, 2012 WL 1959560, at *2 (N.D. Ill. May 22, 2012)). "[D]istrict courts presiding over summary judgment proceedings may not weigh conflicting evidence or make credibility determinations, both of which are the province of the jury." *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704-05 (7th Cir. 2011) (quotations and citations omitted). As that is essentially what remains to be done at this juncture, the Court respectfully denies Kreg's motion for summary judgment [96].

**IV.     Conclusion**

For the reasons stated above, the Court denies Kreg's motion for summary judgment [95]. This matter is set for status on April 15, 2014 at 9:00 a.m.


Dated: March 25, 2014                     _____
                                          Robert M. Dow, Jr.
                                          United States District Judge